ROBERT S. CLYMER, receiver of Robert C. Parvin,

*v.*

BENJAMIN PATTERSON.

The S. Wagon Company, having manufactured unsuccessfully during the summer of 1887, on money advanced by B., who owned a half interest, B., for the company, agreed to sell all its property except some wagons to P., the other principal owner, P. to pay the debts, amounting to $3,100, and to give B. certain stocks as collateral, whatever might be realized on sale of said stock, or otherwise, in money, to be applied to said debts. P. kept on the business with some further small advances from B., but being pressed on judgments of other creditors, amounting to some $400, agreed with B. that if B. would pay these he would turn him over all his property to secure him, B., saying that it was understood that all he had advanced was to be so secured. He had then advanced $3,649.36. P. assigned him absolutely the stocks held as collateral and some patent interests. B. agreed, when all past and future advances, with interest and expenses, should be repaid, to reconvey to P. all of said property not then disposed of and all surplus proceeds of sale, and paid the judgments. P. continued in possession for two years longer, and B. made him further advances, so that, in December, 1889, his whole claim was over $5,000. He had then realized out of the property transferred, $225, besides something on wagons sold, and later he sold the rest of the property for $1,000, which, it appeared, was the best price obtainable. P.'s receiver contended, however, that the only moneys B. was to repay himself under the agreement were the amounts of the judgments and costs, about $450.—*Held,* that even if the prior advances were not secured by that agreement, subsequent ones were, and as these amounted to $1,400, and B. had only received $1,225 and something from the sale of wagons, he had not been repaid, and P.'s receiver had no claim on him for the property transferred.

On final hearing on pleadings and proofs.

*Mr. Joseph J. Summerill,* for the complainant.

*Mr. William T. Hilliard,* for the defendant.

GREEN, V. C.

This bill is filed by the complainant, as receiver of Robert C. Parvin, appointed under the ninety-third section of the Chancery

Clymer v. Patterson.

act, in a suit brought in this court by George S. Powell and Constant E. Jones, judgment creditors of Robert C. Parvin, against him for discovery .&c.   The bill seeks to reach certain property, or the proceeds thereof, transferred by Parvin to the defendant, December 1st, 1887.   The judgment of Powell and Jones was recovered in the supreme court of this state January 3d, 1891, the executions thereon being endorsed with the direction to "levy the sum of $1,826.78 debt,,$5.50 costs, with interest from January 19th, 1891."

Robert C. Parvin, the judgment debtor, had been engaged in the business of building wagons, and had invented certain improvements in their construction, for which he had applied for patents, some of which had been issued to him.

A corporation known as the Parvin Iron Wagon Company had been incorporated, of which company the said Robert C. Parvin was president and one William T. Garrison was treasurer.   This company had a factory at Penn's Grove, in the county of Salem, in this state, with lands adjoining.   In the early part of 1887, Robert C. Parvin and Benjamin Patterson entered into an agreement, by which Patterson agreed to furnish the capital to build ten wagons, under the directions and patents of Parvin, the profits of which venture were to be equally divided; and if it was found sufficiently profitable, a more permanent arrangement was to be entered into.

Afterwards, the Parvin Spring Wagon Company was incorporated, by certificate dated April 27th, 1887, with a capital of $20,000, divided into four hundred shares of $50 each, "the amount with which the company was to commence business was $10,000," the company to carry on business at Penn's Grove, and the object of its incorporation being the manufacture of wagons &c.   The stockholders named were Robert C. Parvin, ninety-nine shares; Benjamin Patterson, ninety-nine shares, and John E. Naudain, two shares.   The certificate was filed and recorded April 28th, 1887.   No stock of this corporation was ever issued.

On the 2d of May, 1887, the Parvin Iron Wagon Company leased to the Parvin Spring Wagon Company a piece of land in

Penn's Grove, adjoining their factory on the west, for a term of five years, with the right to erect a building thereon, and certain privileges of power from the engine of the lessor, use of elevator &c., and the right of renewal and removal of building.

On the 8th of July, 1887, an agreement was made between Parvin and the Parvin Spring Wagon Company, by which Parvin agreed to secure patents for the construction of wagons and have the same issued directly to the company, the company to furnish the capital to manufacture the wagons, allowing one-half of the stock of the company issued from time to time to Parvin, his heirs and assigns.

By an agreement of July 28th, 1887, between Parvin and Patterson, Parvin agreed that Patterson, for the assistance rendered in the organization of the company, should have an equal division of all stock issued after the first $10,000. It does not appear that any of the capital was ever paid in, and Parvin did not have the patents issued to the company, and, as before stated, no certificates of stock were ever issued.

The business of manufacturing wagons, however, was carried on during the summer of 1887 at Penn's Grove, under the direction of Parvin, in a frame building erected on the leased land referred to, with funds that were from time to time furnished by the defendant, Patterson. These moneys, the defendant says, he paid at Parvin's request, under the agreement between them; that Parvin bought the goods and he paid for them, mostly by check; that he paid the wages and received something from the sale of wagons, the amount of which he did not at the time remember. But the business was not a success and the concern seems to have ceased business as a company, for on October 3d, 1887, an agreement was made between Benjamin Patterson, C. L. Sinnickson, Robert C. Parvin and J. E. Naudain, who, it would appear, were the only persons interested, to dissolve the Parvin Spring Wagon Company and close up the business of the same, and on October 17th, 1887, an inventory of the building, fixtures, machinery and material of the Parvin Spring Wagon Company, at Penn's Grove, was made, the build-

Clymer *v.* Patterson.

ing &c. being appraised at $1,522.26; the total appraisement amounting to $2,173.45.

On October 27th, 1887,

"an agreement was made between Benjamin Paterson, for what is known as the Parvin Spring Wagon Company, of the first part, and Robert C. Parvin, by which the party of the first part agreed to sell and convey to the party of the second part, all its right, title and interest in the business, building, tools and machinery lately belonging to the Parvin Spring Wagon Company, except some wagons, in consideration of which Parvin agreed to pay two debts, amounting to $121.05 and $3,000, with interest at six per cent., payable monthly, with a yearly payment of $100 on the principal, and to transfer to the party of the first part [blank] shares of the capital stock of the Parvin Iron Wagon Company as collateral security; whatever amount might be realized on the sale of that stock or otherwise in money to be applied to the payment of the principal named in the agreement. Further, to transfer his one-sixth interest in the Riverview Cemetery Association of Salem county as collateral security; the agreement declaring that it covered all the stock in the Parvin Spring Wagon Company, including that held by C. L. Sinnickson and John E. Naudain; and, further, that the party of the first part would transfer to the party of the second part the lease of the land given by the Parvin Iron Wagon Company to the party of the first part."

The business appears to have been carried on after this by Parvin, and advances to a small amount were continued to be made by Patterson. Parvin shortly afterwards was pressed by creditors, particularly by Kennedy, Willings & Company, who had obtained a judgment against him for $193.94, and William T. Garrison, who had obtained a judgment for $200, and was urgent at this time that Patterson should assist him in his troubles, execution having been issued on these judgments and being in the hands of the officer. Patterson says that he told him that he wanted to be made safe, and that if he (Parvin) would secure him, he would pay his judgments, and Parvin then said that he would turn over to him (Patterson) all that he had, to secure him, and Patterson said that it was understood that all that he had advanced was to be secured by the property so to be assigned. According to the schedule annexed to the answer, Patterson had advanced, up to December 1st, 1887, $3,649.36.

December 2d, 1887, Parvin, by three separate instruments under that date, assigned to Patterson absolutely, by the first, the

equal undivided seven-tenths interest of four letters-patent for improvements in wagons, of which he declared himself to be the sole owner; the second, ninety-nine shares of the Parvin Spring Wagon Company; by another, ten shares of the capital stock of the Riverview Cemetery Association of Salem county, New Jersey, and also assigned ten shares of the stock of the Parvin Iron Wagon Company. Patterson, by an agreement under the same date, reciting these several assignments, agreed as follows:

"When I am paid on the sale of all or part of said stock and patents, all moneys now due me from said Parvin, or which may hereafter be advanced by me to him, with interest and expenses, I will reconvey to him all of said property not then disposed of, and all surplus proceeds of sale after payment of the above-mentioned moneys."

And, on the same day, Parvin addressed a letter to the Parvin Iron Wagon Company, informing them that he had sold his entire interest in that concern to Patterson, tendering his resignation as president of the company, and requesting that he, Patterson, be elected president in his place; also, "I have also sold him my entire interest in the Parvin Spring Wagon Company and interest in the cemetery, and also my entire interest in the patents." Patterson then paid the judgments of Garrison and Kennedy, Willings & Company, as well as certain costs that had been incurred in the chancery suit.

Parvin appears to have continued in possession of the property and Patterson made further advances to him, the whole of such payments by the defendant amounting, inclusive of that stated before, up to December 19th, 1889, to the sum of $5,051.92.

On April 4th, 1889, by an agreement of that date, William T. Garrison agreed to sell, transfer and set over unto Benjamin Patterson all the lands and buildings then owned by the Parvin Iron Wagon Company at Penn's Grove, with the machinery, fixtures &c., together with all claims against the Parvin Spring Wagon Company, a mortgage held by Garrison against said lands and $225 cash, the lands to be free of all other encumbrances, for which Patterson agreed to transfer to Garrison the

Clymer v. Patterson.

seven-tenths interest then held by him in the Parvin Iron Wagon Company patents, four in number, and ten shares of the Parvin Iron Wagon Company held by him, the transfers to be made as soon as Garrison could legally do so, at a time to be mutually agreed upon, and in pursuance of that agreement the transfers were afterwards made and the money paid.

By this transaction, Patterson parted with the seven-tenths interest in the four patents and the ten shares of the stock of the Parvin Iron Wagon Company which he had received from Robert C. Parvin, December 2d, 1887; and by deed dated May 29th, 1890, Benjamin Patterson conveyed the real estate to Clarence L. Sinnickson and also assigned to him the ten shares of the capital stock of the Riverview Cemetery Association that he had received from Parvin. The consideration of these transfers by Patterson to Sinnickson, he says, was the sum of $1,000 cash, making, with amount received from Garrison, the sum of $1,225.

The evidence of Mr. Garrison is that, after the patents had been transferred by Patterson to Garrison, and in that way acquired by the Parvin Iron Wagon Company, which was the owner of the other three-tenths interest, they were sold with another patent to the Columbia Wagon Company, a Pennsylvania corporation, for $15,000, which was paid in stock, and that this stock, of the par value of $50, is now worth from $46 to $47 a share, but it does not appear what part of such purchase-price represented the four patents. The good faith of the transaction between Garrison and Patterson is attacked by the complainant. As I understand Mr. Garrison's testimony, the value put upon the seven-tenths interest in the patents and ten shares of Parvin Iron Wagon Company's stock was $4,000 cash, and that he has estimated the value of the property he transferred in payment thereof at $800 for the land and $3,000 for the improvements, and there is no evidence in the case which, to my mind, successfully attacks Mr. Garrison's good faith in this transaction. It is not seriously contended that the defendant did not have the power, under the absolute assignments, to make a valid transfer to Garrison. It is also charged that the value of the property acquired by Patterson in this

13

exchange was more than sufficient to pay him the amount contemplated by his agreement with Robert C. Parvin, and that Sinnickson, the grantee, as part of the consideration of the transfer, had conveyed to Patterson valuable property in the city of Philadelphia. This is denied by the answer, by the testimony of Patterson and Sinnickson, both of whom state that $1,000 in cash was the consideration of the conveyance and of the cemetery stock. Mr. Patterson says that the property was partly vacant, Parvin being in one building; that he had attempted to sell it at public and at private sale, and had advertised it for several weeks by posters and by newspaper advertisements; that there were no bidders, and that he finally sold it to Mr. Sinnickson, as stated.

This, it would seem to me, leaves as the only question for settlement the contention of the complainant that the only money contemplated by the agreement of December 2d, 1887, which Patterson was entitled to repay himself, were the amounts of the two judgments paid by him and costs, amounting to about $450.

The terms of the agreement, before set out, refer in terms to moneys at that time due to Patterson from Parvin. The judgments had not then been paid, and these words, from all that appears in the case, would be meaningless unless they refer to the advances which had been made by Patterson in carrying on the business; but whether this is the case or not, there is no question as to the latter part of the agreement, that he was to be repaid moneys which might thereafter be advanced by Patterson to Parvin, with interest and expenses, and these items, according to the schedules annexed to the answer, and which are not questioned as having been made after December 2d, 1887, amount to $1,402.56, without interest; and as the whole amount received by Patterson is $1,225, and some moneys, amount unknown, from the sale of wagons, he has not been repaid according to the terms of his agreement. The stock of the Parvin Spring Wagon Company is undoubtedly of no value, and I am therefore of opinion that the bill should be dismissed.